**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Horace Edward BATES,
Defendant–Appellant.**

**No. 86–8916.**

United States Court of Appeals,
Eleventh Circuit.

March 23, 1988.

Steve McCusker, Savannah, Ga., (court-appointed), for defendant-appellant.

William E. McAbee, II, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before HILL and EDMONDSON, Circuit Judges, and ARONOVITZ *, District Judge.

HILL, Circuit Judge:

In November, 1986, Horace Bates was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a) (hereinafter the "Travel Act"). Bates was sentenced to five years for each conviction, with the terms to run concurrently. The court placed a special parole term of three years on Count I, possession with intent to distribute cocaine, and assessed Bates $50.00 per count.

Bates challenges both convictions. He argues first that the court should have granted his motion to suppress various pieces of evidence. Secondly, Bates maintains that the evidence presented was insufficient to support his conviction under Count II for a violation of the Travel Act. We disagree with Bates' first contention, but agree with his second one.

### FACTS

On July 19, 1986, Bates was driving north on a section of U.S. Interstate 95 in Georgia. Georgia Bureau of Investigation Narcotics Enforcement Agent Nathan Katzif spotted Bates' vehicle, and was suspicious of it. Katzif radioed to Georgia State Patrol Trooper T.D. Bentley, with whom he was working, and recommended that Bentley stop Bates' car if he could. Although Bates was slightly exceeding 55 miles per hour, the speed limit at that stretch of road, Bentley did not stop Bates for that violation. After following Bates for approximately one mile, Bentley observed Bates reading a map and driving too closely behind the car in front of him.

Bentley stopped Bates and gave him a citation for following too closely. Bentley asked Bates if he would consent to a search of his vehicle, and Bates nodded yes. Katzif arrived on the scene and produced a consent form and a form waiving the constitutional right to a search warrant. After both forms were fully explained, Bates signed both.

Bates pointed out to the officers that a loaded gun was concealed in the front seat of his car. Bentley discovered $1400.00 in the glove compartment, and cocaine wrapped in a piece of aluminum foil inside a towel covering the gun. Inside a briefcase in the back seat Katzif found six plastic bags containing cocaine. Traces of cocaine were found in a hidden compartment inside the glove box of the car.

After Bates received *Miranda* warnings, he gave a full statement to Katzif, and then corrected the statement himself. Bates explained that he had agreed to deliver some "packages" for a friend named Jocko, but that he did not realize the packages contained cocaine.

### COUNT I—THE MOTION TO SUPPRESS

Bates first maintains that the district court should have granted his motion to suppress the introduction of the cocaine and confession into evidence. Bates claims that Bentley's traffic stop was pretextual,

* Honorable Sidney M. Aronovitz, U.S. District Judge for the Southern District of Florida, sitting by designation.

and cites a series of other taints along the path from stop to consent to confession.

Defendant Bates first suggests that his arrest was without probable cause, arguing that the testimony of the police officers is inherently unbelievable. We uphold the finding of probable cause.

■ The district court found as a matter of fact that Bates "was stopped because he was violating a traffic statute of the state of Georgia." R3–75. Ample evidence supported this conclusion. Officer Bentley testified that Bates' car followed another too closely, in violation of O.C.G.A. 40–6–49(a). We cannot hold that the district court's finding of fact was in any way "clearly erroneous."

Accepting the facts as the district court declared them to be, we must assess the probable cause determination. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir.), *cert. denied sub nom., Galvan v. United States*, 464 U.S. 914, 104 S.Ct. 775, 78 L.Ed.2d 256 (1983). When Bates' car moved to within one car length of the automobile preceding it, Bates violated the Georgia statute, and Officer Bentley had probable cause to stop him.

Bates next claims that his arrest was pretextual, arguing that the officers' desire to stop him invalidated any probable cause derived from his traffic violation. In assessing a claim of pretextual arrest, "the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986) (emphasis in original).

■ The district court specifically determined that Bates was arrested because of his traffic violation and not because of the officers' suspicions. R3–75. Officer Bentley testified at trial that it was his practice to stop cars for following too closely. R4–

70. Based on this testimony and finding, we must conclude that the arrest of Bates was not pretextual: the patrol officers of Georgia are charged with enforcing Georgia's traffic laws, and this court can presume no less than that a patrol officer would obey this mandate.

■ Bates extends his claim of pretextual arrest by maintaining that Officer Bentley, in his eagerness to stop Bates, "created" the traffic violation by locating himself in the right lane so that Bates could not pass the car in front of him. Allowing this argument to succeed would undermine Georgia traffic regulation by judicially granting drivers special permission to follow too closely whenever they cannot pass the car in front of them. The district court observed that Bates could have slowed down to avoid the traffic violation, and we agree.

■ Alternatively, appellant Bates argues that even if probable cause did exist the stop should be declared pretextual. Bates asks this court to interpret the *Smith* rule as differentiating a stop based solely on a traffic violation and one based on both a violation and a hunch of other illicit activity. That interpretation would directly controvert the *Smith* holding. In *Smith* this court articulated the standard for pretextual stops in terms of " 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Smith*, 799 F.2d at 709, *citing Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985), *quoting Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Here, Bates clearly violated a traffic regulation of Georgia; consequently, Officer Bentley's actions were objectively justifiable. Whether Officer Bentley hoped such a violation would arise is irrelevant to our inquiry: "an objectively reasonable stop . . . is not invalid solely because the officer acted out of improper motivation." *Smith*, 799 F.2d at 708.

■ Officer Bentley stopped Bates based on Bates' objective violation of a statute for which the patrol regularly made stops, with or without suspicion of drug-related activity. In this particular case the government presented additional evidence that Bentley had an objective rationale for the stop, since Bentley could have made the stop earlier for a minimal violation of the speed limit, but chose to wait. According to the evidence, at the time and place of Bates' stop the patrol was not making stops for minimally excessive speed. Such evidence, while not mandatory, is persuasive.

Fourthly, should this court find that officer Bentley had probable cause to stop Bates, Bates requests that this court determine that the search of his car was unreasonable and beyond the scope appropriate given his traffic violation. Bates correctly notes that probable cause for a stop does not justify an unrelated search.

■ We need not determine whether the search was related to the arrest in this case, since the question misses the government's contention: the search was authorized not by the probable cause for the traffic stop but by the written and oral consent given by Bates. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).

■ Finally, Bates attacks the consent on which the officers based the search, arguing that the United States failed to demonstrate that Bates gave the consent freely and voluntarily. Bates claims he was not told he was free to leave [citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)], was not told he could refuse to consent to the search [citing *United States v. Fike,* 449 F.2d 191 (5th Cir.1971)], and was not read his *Miranda* rights [citing *United States v. Ballard,* 573 F.2d 913 (5th Cir.1978)].

As to Bates' first two points, the Supreme Court has held that the "voluntariness" of a consent is "not in and of [itself]

determinative." *Schneckloth,* 93 S.Ct. at 2047. Furthermore, in this case the consent seems clear. The defendant, an educated man, signed a form stating that he had "been informed of [his] right to refuse to consent to such a search." R1–21–24. Moreover, the district court found that defendant "was advised that he did not have to consent to a search of his automobile, but that nevertheless he did." R4–76.

As his third ground for attacking the consent, Bates suggests that we extend the holding of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to require warnings prior to consent searches. We first note that the trial court found and the record evidences that full warnings were given. But even were the facts more favorable to the defendant, we should not make such an extension of *Miranda* in light of the Supreme Court's refusal to do so:

> One alternative that would go far toward proving that the subject of a search did know he had a right to refuse consent would be to advise him of that right before eliciting his consent. That, however, is a suggestion that has been almost universally repudiated by both federal and state courts, and, we think, rightly so. For it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning.

*Schneckloth,* 412 U.S. at 231, 93 S.Ct. at 2049–50.[1]

Bates finally contends that the illegalities of the search and seizure tainted his subsequent confession. *Amador–Gonzalez v. United States,* 391 F.2d 308, 318 (5th Cir.1968). Because we believe the search was legal, we need not reach the question of whether this particular search tainted Bates' confession.

## COUNT II—THE TRAVEL ACT

Bates also takes issue with his conviction for violating the Travel Act, maintaining

---

1. *United States v. Ballard,* 573 F.2d 913 (5th Cir.1978) does not require *Miranda* warnings before every consent. *Ballard* merely held that consent following illegal stops must be proven to be voluntary. *Ballard* suggested that "intervening factors," a term which it did not define, could prove voluntariness.

that his illegal activity was not shown to fall within the scope of the Act. The Travel Act prohibits interstate travel with intent to: "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). The code further defines "unlawful activity" as: "any business enterprise involving ... narcotics." 18 U.S.C. § 1952(b). The appellate controversy in this case centers around the meaning of the term "business enterprise."

Appellant Bates argues that he should not have been convicted under the Travel Act count because the prosecution offered no evidence demonstrating that Bates had engaged in a "business enterprise." In reaching this conclusion, Bates defines the disputed term as "a continuous course of conduct rather than sporadic casual involvement." Appellant's Brief at 46.

The government asks the court to uphold the conviction by defining "business enterprise" to include even one act involving interstate transportation of narcotics. The prosecutor suggests that we: (a) deem business "enterprise" to be the equivalent of business "activity"; (b) focus on the word "business."

The government has little difficulty proving that Bates undertook a business-oriented activity: Bates acknowledges he was to be paid for the packages he was transporting. However, the government must set forth a case which demonstrates that the alleged activities meet the *entire* statutory definition.

The government's argument, then, reduces to a request that we hold that a single action involving the transportation of narcotics can constitute the requisite business enterprise. The government offers five cases to support this contention.

The most persuasive of the five cases is *United States v. Vanichromanee*, 742 F.2d 340 (7th Cir.1984), in which the Seventh Circuit stated: "[o]ne instance of interstate travel will suffice to provide a basis for conviction under § 1952 if the defendant travels to further the illegal activity." *Id.* at 349. However, in that case the court found "acts" had been performed; it dealt with a contention that more than one incident of *travel* was required, not that more than one unlawful activity was necessary. Secondly, the Seventh Circuit pointed out that the statute states that a defendant violates the act when he travels and "thereafter" [18 U.S.C. § 1952(a) ] engages in the proscribed activities. *Id.* Since the government concedes that the defendant was stopped in the midst of his travel, it cannot contend that he performed any acts following the travel.

The government also cites *Spinelli v. United States*, 382 F.2d 871 (8th Cir.1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In that case the Eighth Circuit stated that: "the purposes of the statute are well served by thwarting the small time interstate racketeer before he has a chance to expand his illegal activities." *Id.* at 889. However, the Eighth Circuit was not faced with a question of whether a *single* act by an individual not shown to be within any network of illegal activity sufficed to meet the statutory "business enterprise" standard.[2] In fact, that court specifically noted that: "Spinelli was not a casual offender.... He was a racketeer committing regular and significant violations of the Missouri law. He made regular and repeated trips across the state line, and over a long period of time was involved in a very substantial gambling business." *Id.* at 890.

The other three cases cited by the United States are similarly inapropos. In *United States v. Kendall*, 766 F.2d 1426 (10th Cir. 1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986), the court specifically held that: " 'business enterprise' means a continuing course of conduct rather than sporadic casual involvement...." *Id.* at 1434. A Delaware district court, citing the familiar "continuous" language, found that the activity of the defendant

---

**2.** Because the state does not offer to show that Bates was involved in a network of criminal activity, we need not ask whether the Travel Act applies to an individual who has performed a single act, albeit in conjunction with a group which has performed one or more similar acts.

before it was not casual, sporadic behavior. *United States v. Bergdoll,* 412 F.Supp. 1308, 1315 (D.C.Del.1976). Finally, the United States cites *United States v. Archer,* 355 F.Supp. 981 (D.C.N.Y.1972), *rev'd,* 486 F.2d 670 (2d Cir.1973). That case involved a different portion of § 1952, the bribery provision, to which the court found the "business enterprise" language did not even apply.

The cases arrayed against the government on this issue are numerous and more precisely on point. Binding Fifth Circuit precedent has defined "business enterprise" as " 'a continuous course of conduct, rather than sporadic casual involvement in a proscribed activity.' " *United States v. Davis,* 666 F.2d 195, 202, n. 10 (5th Cir. Unit B 1982), *citing United States v. Cozzetti,* 441 F.2d 344, 348 (9th Cir.1971). *Accord United States v. Lignarolo,* 770 F.2d 971, 979 (11th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). *United States v. Zizzo,* 338 F.2d 577, 580 (7th Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965). In *Davis,* the court found a continuous course of conduct where: "one methaqualone transaction was proved, but the evidence as a whole showed that [the defendants] had for some time engaged in a continuous business relationship in illegal drug trafficking." *Davis,* 666 F.2d at 202.

The legislative history similarly contradicts the government's contention: "[t]he use of the term 'business enterprise' requires that the activity be a continuous course of conduct. Thus, individual or isolated violations would not come within the scope of this bill since they do not constitute a continuous course of conduct so as to be a business enterprise." Senate Comm. on the Judiciary, Racketeering Enterprises—Travel or Transportation, H.R. Rep. No. 966, 87th Cong., 1st Sess. 3, *reprinted in* 1961 U.S.Code Cong. & Ad. News 2664, 2666.

■ The judge correctly instructed the jury as to the need for a "continuous"

course of activity. Consequently, we cannot overturn the jury's verdict of guilty if we find evidence to support the jury's conclusion. After a careful study of the record, however, we find no evidence that the defendant was part of any enterprise whatsoever, much less one that was continuous. The government makes no claim that the facts it offered into evidence at trial demonstrate a continuous course of conduct. The best facts to be marshalled on the government's behalf are: Mr. Bates' car's odometer showed 30,000 more miles than the average car its age; Mr. Bates was carrying approximately $1400 in cash; traces of cocaine were found in a concealed compartment in the glove box;[3] Mr. Bates made the highly ambiguous statement: "[t]his is the first time I carried the weapon and the cocaine." R4–48. These facts do not amount to proof that the defendant was involved in an enterprise constituting a continuous course of drug trafficking.

As to the conviction for possession of cocaine, Bates' conviction is AFFIRMED. As to the conviction for a violation of the Travel Act, Bates' conviction is REVERSED.

---

3. The evidence of the compartment was offered merely to contradict defendant's testimony that he did not use cocaine. The prosecutor observed that the compartment was "small." R4–227. We do not decide today whether a vehicle specially modified to conceal drugs might be proof of a continuous activity if the modifications were substantial and if the government demonstrated that the modifications had been used previously to conceal drugs.