UNITED STATES of America

v.

Anthony Carl DELYEA, a/k/a Anthony Carl Coker, Defendant.

Crim. No. 88–24–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 6, 1989.

Deborah Griffin Fowler, Macon, Ga., for plaintiff.

Bruce J. Rosen, Madison, Wis., for defendant.

ORDER

OWENS, Chief Judge.

Shortly before 8:00 p.m. on September 24, 1988, Trooper Daniel S. Ray of the Georgia State Patrol stopped a vehicle with Wisconsin license plates travelling north on Interstate 75 operated by defendant Anthony Delyea. During a subsequent search, Trooper Ray discovered and seized approximately five kilograms of suspected cocaine from defendant's travel bag located in the rear[1] of the vehicle. The matter presently before this court is defendant Delyea's motion to suppress the seized contraband.

A hearing on defendant's motion was held on December 14, 1988.[2] During that hearing, Trooper Ray testified that defendant Delyea's vehicle was stopped because "[h]e had a headlight out and after he passed me, he was weaving as if under the influence." Transcript of December 14, 1988, Suppression Hearing ("Transcript"), p. 4. A photograph taken at the scene confirmed that one of the headlights was indeed out, and defense counsel admitted that fact. See id. at p. 5 and at pp. 103–04. Though defendant Delyea denied that his vehicle was weaving,[3] neither the government nor the defense developed this aspect of the case with any particularity. See id. at p. 74 and p. 98.[4] Trooper Ray wrote

1. Defendant's travel bag was located in the rear of the vehicle and was accessible from the main passenger compartment. The back seat of the vehicle could be, and on this occasion was, "folded down" to provide additional cargo space. See Transcript at p. 12.

2. The parties were permitted to supplement the record at a hearing held on January 4, 1989. During that hearing, three individuals testified about two separate incidents in which Trooper Ray stopped vehicles on Interstate 75. None of those individuals' testimony casts doubt upon Trooper Ray's credibility as a witness. Further, their testimony failed to illuminate any improprieties in Trooper Ray's roadside practices.

3. Defendant Delyea, in response to defense counsel's question, stated that he would commit perjury to escape prosecution of this matter. Thus, this court must find defendant Delyea's denials to be self-serving and without credibility.

4. Trooper Ray testified, however, that had Mr. Delyea refused to permit a search of the vehile he would have conducted a test for intoxication. Trooper Ray was convinced that Mr. Delyea was intoxicated. Evidently, a urinalysis was con-

defendant Delyea two warning tickets that day—one for the malfunctioning headlight and one for the weaving vehicle. *See id.* at p. 13.

■ Based upon the testimony given during the hearing as supported by the photograph and the warning tickets, this court determines that Trooper Ray's stop of defendant Delyea's vehicle was not pretextual. "[I]n determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith,* 799 F.2d 704, 710 (11th Cir.1986) (emphasis in original). Georgia law makes driving without both headlights a misdemeanor. *See* O.C.G.A. § 40–8–7(b)(2). While this court thinks it likely that not every such vehicle is stopped, defendant has produced no evidence which indicates that such stoppage is unusual. Indeed, defendant has produced no evidence regarding the frequency with which vehicles are stopped for this particular violation either by this particular trooper or by state patrol officers in general.

Defendant contends that the absence of such statistical information proves fatal to the government under the authority of *United States v. Bates,* 840 F.2d 858 (11th Cir.1988). While the evidence in *Bates* does include testimony that the officer in question did as a matter of practice enforce the particular violation precipitating the stop, that case stops far short of imposing a requirement upon the government that evidence of such enforcement practices be produced. Rather, this court finds it more logical to expect the defense to elicit such information either from the officer or from the statistical records kept by various law enforcement agencies. This court finds

more informative on this matter other language in *Bates:* "the patrol officers of Georgia are charged with enforcing Georgia's traffic laws, and this court can presume no less than that a patrol officer would obey this mandate." *Bates,* 840 F.2d at 860.

■ Having determined that the stop was not pretextual, the court must next consider the validity of the search. Trooper Ray testified that the defendant "appeared to be under the influence. He had —his eyes were bloodshot, pupils were dilated, kind of unkempt looking.... And he appeared to be under the influence when he was talking to me." Transcript at p. 8. Trooper Ray also stated that defendant Delyea's nose was "red and running and at one point, I asked him if he had a cold and he stated no."[5] (footnote added). *Id.* Lastly, Trooper Ray stated that on the front seat of the defendant's vehicle he saw white powder and tissues. *Id.* Defendant Delyea contends that no white powder was on the seat; however, he admitted that white powder, cocaine, could have been on the floorboard. *Id.* at 96.

Both the defendant's condition and the white powder visible within the interior of the vehicle prompted Trooper Ray to request for consent to search the vehicle. *See* Transcript at p. 10. Trooper Ray testified that defendant Delyea consented; defendant Delyea vigorously contends otherwise. Considering the defendant's statement regarding his propensity for truthfulness, *see supra* n. 2, this court finds Trooper Ray's testimony far more credible and determines that defendant Delyea did in fact consent to the search of the vehicle. Based upon this consent, the search was valid.[6] *See Schneckloth v. Bustamonte,*

ducted, but the complete results of that test were not presented to the court. *See Transcript,* pp. 57–8 and 90–1.

**5.** Though insisting that he had not used cocaine since midnight, defendant Delyea admitted that he had used cocaine at some point prior to midnight. Defendant Delyea further acknowledged that he was aware that a urinalysis taken some time subsequent to his arrest had indicated the existence of cocaine. *See* Transcript at pp. 95–6. Since the use of cocaine oft times

manifests itself in the physical manner observed by Trooper Ray, this court notes that Mr. Delyea's admissions of recent use lend credence to Trooper Ray's observations.

**6.** Assuming *arguendo* that defendant Delyea did not consent, this court finds that this situation fits neatly within the purview of the plain view doctrine. *See Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (following an otherwise lawful "initial intrusion," police officer inadvertently discovers items which, to the

412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In accordance with the above discussion, defendant Delyea's motion to suppress the introduction into evidence of the suspected cocaine is DENIED.

SO ORDERED.

trained eye, immediately appear to be contraband). The discovery by Trooper Ray of what appeared to be cocaine in the interior of the vehicle provided probable cause for the subsequent search of defendant Delyea's travel bag.

*See Texas v. Brown,* 460 U.S. at 750, 103 S.Ct. at 1547, 75 L.Ed.2d at 519 (Stevens, J., concurring) (differentiating between a valid seizure and a valid search), citing *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).