**UNITED STATES of America**

v.

**Danny Richard GRILLO, Jr., Defendant.**

**Crim. No. 88–16–VAL (WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Feb. 1, 1989.

Charles L. Calhoun, Asst. U.S. Atty., Macon, Ga., for plaintiff.

James V. Caltagirone, Tampa, Fla., for defendant.

## ORDER

OWENS, Chief Judge.

At approximately 5:05 p.m. on November 7, 1988, Trooper A.D. Dickerson of the Georgia State Patrol stopped a 1987 Mercury Marquis with Florida license plates travelling north on Interstate 75 in Tift County, Georgia, and operated by defendant Danny Richard Grillo, Jr. During subsequent searches Trooper Dickerson discovered and seized a loaded Beretta .380 caliber automatic with two clips loaded with Glaser bullets; from Grillo's pockets, a small plastic bag containing white powder and a film cannister containing a green leafy substance and two "rocks" of suspected crack cocaine; and from two suitcases in the trunk of the car, twenty-five one kilogram packages of cocaine. The matter presently before this court is defendant Grillo's motion to suppress as evidence, on grounds that such seizures were in violation of the Fourth and Fourteenth

Amendments to the Constitution of the United States, all items (firearm and contraband) and the fruits thereof seized from his vehicle and person. A hearing on defendant's motion to suppress was held on January 20, 1989, in Macon, Georgia, and after a thorough review of the evidence presented, the parties' briefs, and the relevant case law, this court is now in a position to decide defendant Grillo's motion.

The government raised the initial issue of standing, arguing that defendant Grillo has not alleged "a legitimate expectation of privacy in the vehicle or the luggage." Upon review of the evidence, this court finds that the defendant has alleged facts sufficient for standing to object to the search. *See United States v. Miller*, 821 F.2d 546, 548–49 (11th Cir.1987); and *United States v. Martinez*, 808 F.2d 1050, 1056 (5th Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987).

■ Trooper Dickerson testified that he stopped defendant Grillo for driving at the speed of sixty-seven miles per hour in a fifty-five mile per hour zone. Defendant Grillo was in fact issued a written warning citation for speeding. Defendant Grillo alleges that this traffic stop was a mere pretext to conduct a drug investigation based on a "drug courier profile." Defendant Grillo argues that this allegation is supported by his claim that Trooper Dickerson pulled along the side of his car before pulling him over. Trooper Dickerson testified that he does not remember whether he did so or not on this particular stop; however, he further testified that sometimes he would pull up beside a car before making a speeding stop. Trooper Dickerson explained that this would usually alert a driver that he was the object of the trooper's attention, and that on many occasions if he just came up behind a car with his light flashing, the driver would travel a considerable distance either not noticing the lights or thinking they were intended for someone else.

The standard for determining whether a stop is invalid as pretextual is "whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986) (emphasis in original). "[P]atrol officers of Georgia are charged with enforcing Georgia's traffic laws, and this court can presume no less than that a patrol officer would obey this mandate." *United States v. Bates*, 840 F.2d 858, 860 (11th Cir.1988). Upon consideration of the evidence and the relevant case law, this court finds that Trooper Dickerson's stop of defendant Grillo was not pretextual.

■ Having determined that the stop in question was not pretextual, this court must next determine whether defendant Grillo was impermissibly detained after this stop. Defendant Grillo claims that Trooper Dickerson violated his Fourth Amendment rights by continuing to ask him questions after returning his driver's license and issuing the warning citation, and that this constituted an impermissible detention because he did not believe himself free to leave under the circumstances. In support of this claim defendant cites *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), which states that "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Delgado*, 466 U.S. at 215, 104 S.Ct. at 1762, 80 L.Ed.2d at 255. In *Delgado*, the Supreme Court states that it has "yet to rule directly on whether the mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment" and goes on to discuss *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion), and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed. 2d 357 (1979). After discussing *Royer* and *Brown* the Court states:

What is apparent from *Royer* and *Brown* is that police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that

people do so, *and do so without being told they are free not to respond,* hardly eliminates the consensual nature of the response. [citation omitted]. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. (emphasis added).

In *Royer,* the Supreme Court observed that law enforcement officers do not violate a person's Fourth Amendment rights "by asking him if he is willing to answer some questions, [or] putting questions to him if the person is willing to listen." The Court cited *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the proposition that a person questioned by an officer in such a manner "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." The Supreme Court concluded its observation by stating: "If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed."

The evidence shows that, upon issuance of defendant Grillo's warning citation, Trooper Dickerson also returned his driver's license. Both defendant Grillo and Trooper Dickerson testify that at this point Trooper Dickerson continued to ask questions of defendant Grillo. Trooper Dickerson testified that at this time defendant Grillo was free to leave.

In answer to Trooper Dickerson's question concerning why he withdrew his consent to search, defendant Grillo stated that it was because he had a firearm in the car, which he voluntarily produced at Trooper Dickerson's request. Both Dickerson and Grillo testified that after the gun has been checked, Trooper Dickerson returned it to Grillo. Dickerson's testimony was that at this time Grillo was still free to go. Defendant Grillo testified that he did not feel free to leave because Trooper Dickerson was still asking questions; however, he

also testified that Trooper Dickerson did not tell him he could not leave.

Both Dickerson's and Grillo's testimony also shows that while Trooper Dickerson went to his car to call to see if defendant Grillo had permission to drive the car, that Grillo was allowed to return to his grandmother's car which still had the keys in it. Trooper Dickerson testified that at this time Grillo was still free to go. .

Defendant Grillo testified that Trooper Dickerson's voice had changed when he told him to get out of the car after Deputy Hamby had seen him reach under the seat of the car. The court finds this consistent with Trooper Dickerson's testimony that at this point Grillo was no longer free to leave.

In light of the relevant case law, upon review of the evidence concerning the circumstances up until the time Trooper Dickerson ordered defendant Grillo out of the car, this court finds the circumstances were not "so intimidating" or otherwise such that "a reasonable person would have believed that he was not free to leave." *Delgado,* 466 U.S. at 215–16, 104 S.Ct. at 1762, 80 L.Ed.2d at 255. Defendant Grillo's driver's license had been returned to him, his loaded gun had been returned to him, he was not confined but allowed to get back in his grandmother's car with the keys while Trooper Dickerson used the radio, and he was never told he could not leave. These circumstances are certainly not of the nature that would demonstrate to a reasonable person that he would not be free to leave if he so desired. Therefore, this court finds that, based on the facts of this incident as described so far, there was no seizure within the meaning of the Fourth Amendment and that defendant Grillo's constitutional rights were not infringed upon by Trooper Dickerson's questioning.

■ Although this court finds that defendant Danny Richard Grillo, Jr. was not detained up until the point Trooper Dickerson ordered him out of the car after conferring with Deputy Hamby, the court would like to note that even if it had found that defendant Grillo had been detained, the court finds the evidence sufficient to sup-

port as permissible any such detention that may possibly be found under these facts. *Terry* and its progeny set forth the standard for determining whether a brief detention to investigate suspicious activity is justified. In order for such a brief detention to be justified the detaining officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906, justify a "reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed. 2d 890, 894 (1980).

Trooper Dickerson testified that he became suspicious when he first approached the car and noticed wires, each plugged in with adapters to different cigarette lighters in the front and rear seats, running to various pieces of electronic equipment inside the car. The equipment consisted of a radar detector, cellular telephone batteries, and a citizens band radio which appeared to be new, with the box still in the floor of the car. Trooper Dickerson testified that many people have any one piece or combination of two pieces of this type of equipment; however, he stated that it was the combination of all three of the components, along with the way they were installed by adapters with wires running throughout the car, that aroused his suspicion of *some* type of illegal purpose or activity.

Trooper Dickerson also testified that he was suspicious because defendant Grillo had stated that he was going to visit friends in Macon, but he had noticed only a small tote bag in the car. In addition, the car Mr. Grillo was travelling in did not belong to him.

Trooper Dickerson testified that defendant Grillo was not unusually nervous before being issued the warning citation, but later became much more nervous when he asked whether he was carrying any contraband and asked for consent to search. Trooper Dickerson also testified that later, as defendant Grillo went back to his car to get his gun he appeared to be very nervous, but when he got to the car and was able to see that the tote bag containing the gun was in the back seat he appeared to be greatly relieved.

Based upon the evidence and testimony presented, this court finds that, even if the encounter between Trooper Dickerson and defendant Grillo had risen to the level of a seizure or detention, Trooper Dickerson's actions were reasonable and justified under *Terry*.

■ The court must now decide whether it was proper for Trooper Dickerson to detain and later search defendant Grillo after he had been observed reaching under the seat of his car by Deputy Hamby. *Terry* addressed the concern that sometimes officers have the need to take measures to protect themselves and others in situations where they may lack probable cause for arrest. The Supreme Court stated that when an officer is investigating a person's suspicious behavior at close range and he has a justifiable belief that the person may be armed and dangerous to himself or others, it would be "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. After considering this concern, the court concluded:

There must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [citations omitted]. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable

inferences which he is entitled to draw from the facts in light of his experience. *Id.* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

Trooper Dickerson testified that while he was at his car calling to see if the car belonged to defendant Grillo's grandmother, Deputy Hamby told him that he had observed Grillo reach beneath the seat of the car and place something in his pants pockets. Defendant Grillo testified that he did indeed reach beneath the seat, but that it was to place a can of Skoal tobacco on the floor, and that he placed nothing in his pockets. After Deputy Hamby informed Trooper Dickerson of what he observed, Trooper Dickerson ordered defendant Grillo to get out of the car and asked him what he had put in his pockets. There is no dispute that at this point defendant Grillo was under detention and was not free to leave. Evidence shows that after twice refusing to reveal what he had in his pockets, defendant Grillo attempted to flee, was restrained, and a plastic bag containing white powder and a film cannister containing a green leafy substance and two rocks of suspected crack cocaine were removed from his pockets.

In determining whether Trooper Dickerson's actions were reasonable, this court must look at the facts and circumstances known to him at the time and determine whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. The facts and circumstances known to Trooper Dickerson at this time were:

1. He was already suspicious of some type of illegal activity on the part of Mr. Grillo.

2. Deputy Hamby had just reported to him that he had observed Mr. Grillo reach beneath the seat of the car and place something into his pockets.

3. One pistol loaded with Glaser[1] ammunition had been recovered and was placed back into Mr. Grillo's car.

4. Trooper Dickerson testified that at this time he was concerned about the possibility of the existence of another weapon.

5. He saw a bulge in Mr. Grillo's pocket and could not tell what it was.

6. He knew the car Mr. Grillo was in did not belong to him.

7. He did not know if the car was stolen.

8. He knew that Mr. Grillo knew he was radioing in to see if Mr. Grillo had permission to drive the car.

9. After refusing to identify what he had in his pocket, Mr. Grillo attempted to run.

10. Trooper Dickerson testified that his main concern at this time was the safety of himself and Deputy Hamby.

■ Based upon the surrounding circumstances and the facts known to Trooper Dickerson, this court finds that his concerns and actions were justified and reasonable and that his detention of Mr. Grillo and the subsequent search of his pockets were in accordance with the standards set forth in *Terry*. The court notes that the sole justification for such a search under *Terry* is the protection of the officer and others nearby, and it must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer. Although a weapon was not recovered, the court finds that due to the circumstances noted above, especially Deputy Hamby's observation and the presence of the bulge in defendant Grillo's pocket, this search did not exceed the scope allowable under *Terry*. The court also notes that although there was no frisk of defendant Grillo, the bulge that would have been revealed by a frisk was visually detected by Trooper Dickerson and due to defendant Grillo's attempted flight[2] Trooper Dicker-

---

1. Trooper Dickerson testified that Glaser ammunition is a type that is much more powerful than ordinary ammunition.

2. In another highway stop case, *United States v. Costner*, 646 F.2d 234 (5th Cir.1981), the court held that "the fleeing of Costner from the officers was a sufficient additional factor to increase their reasonable suspicion of probable

**582**

son was not able to properly conduct a frisk. Upon discovery of the contents of defendant Grillo's pockets, Trooper Dickerson certainly had probable cause to arrest him. Upon defendant Grillo's arrest, Trooper Dickerson could search the passenger compartment of the car and its contents as a search incident to a lawful arrest under *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), if an officer has probable cause to suspect that a legally stopped vehicle contains contraband, then he may conduct a warrantless search "no broader and no narrower than a magistrate could legitimately authorize by warrant." If probable cause justifies the search of a lawfully stopped vehicle, then it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Ross,* 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594. Upon objective consideration of all of the surrounding facts and circumstances, this court finds that Trooper Dickerson had probable cause to believe the car contained contraband and, therefore, his search of the trunk and its contents was proper.

In accordance with the discussion above, this court finds that the evidence of illegal activity obtained in this case is not the product of unconstitutional conduct, and, accordingly, it should not be suppressed. Therefore, the motion of defendant Danny Richard Grillo, Jr. is DENIED in its entirety.

SO ORDERED.

cause to arrest Costner. The subsequent search of Costner was valid as one incident to his

arrest."