936 F.2d 574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Alberto PEREZ, Defendant-Appellant.
 No. 90-5915.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and JOINER, Senior District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a drug case in which the defendant entered a conditional plea of guilty after the district court denied a motion to suppress evidence of more than 70 pounds of marijuana seized from the defendant's automobile during a traffic stop. The defendant argues that the motion to suppress ought to have been granted because (a) the ostensible basis for the stop--a minor traffic violation--was a pretext for searching a car driven by an Hispanic from Florida, and (b) the officer who made the stop had no reasonable grounds to suspect drug activity. Finding no clear error in the factual determinations on which the district court based its denial of the motion to suppress, we shall affirm the conviction.
 
 
 2
 * On March 19, 1990, defendant Jose Perez was driving north on a limited access highway (Interstate 75) in Kentucky. His car, a blue Ford with Florida license plates and several visible antennae for electronic equipment, was traveling in a left-hand lane. The speed of the car was slightly below the posted limit of 55 miles per hour, according to the government's evidence, and the car was not passing other vehicles.
 
 
 3
 Officer James Lombardi, a patrol officer with the Lexington-Fayette Urban County Police, spotted the car and decided to stop it. The officer believed, he testified, that there had been a violation of Kentucky statutes requiring motorists to remain in the right-hand lane except when passing.
 
 
 4
 After following Mr. Perez's car past an area where a stop would not have been feasible, Officer Lombardi pulled alongside the vehicle. Mr. Perez would not meet the officer's gaze, but slumped down so that his line of vision was just barely over the steering wheel. Mr. Perez then engaged in what Officer Lombardi described as a "screening maneuver," slowing down to leave less than a car's length between his own car and a pickup truck that was behind him. This maneuver prevented Officer Lombardi from pulling behind the Perez car.
 
 
 5
 The officer honked his horn to get the pickup truck to move out of the way. When the path was clear the officer put on his flashers and signaled for Mr. Perez to pull over. The officer had already been promised back-up assistance by this point.
 
 
 6
 Mr. Perez stopped his car and did not wait for Officer Lombardi to approach him. Instead, Perez immediately got out of his vehicle, walked up to the officer, and handed him his driver's license.
 
 
 7
 While Officer Lombardi was running a check on the license, two back-up officers arrived. One of them ran a check on Mr. Perez's passenger--a hitchhiker named Steven Dressel--and discovered that a warrant had been issued for his arrest. Mr. Dressel was taken into custody.
 
 
 8
 Officer Lombardi, meanwhile, talked with Mr. Perez. After issuing an oral warning with regard to the traffic offense, the officer asked Perez if there were any weapons or illegal narcotics in his car. Receiving a negative answer, the officer inquired if he would consent to a search of the vehicle. "No," Mr. Perez responded, "that's how I got caught last time."
 
 
 9
 This disclosure did nothing to allay Officer Lombardi's suspicion, of course, and at his request one of the other officers walked a drug dog around the Perez car. The dog "altered," indicating the presence of drugs. The officers then searched the car and found the marijuana.
 
 
 10
 Mr. Perez was charged with possession of marijuana with intent to distribute it, a violation of 21 U.S.C. Sec. 841(a)(1). He promptly moved to suppress the use of the marijuana as evidence. The motion was denied after an evidentiary hearing. With the consent of the government and the approval of the district court, Mr. Perez entered a guilty plea in which he reserved his right to appeal the ruling on the motion to suppress. See Rule 11(a)(2), Fed.R.Crim.P. The court sentenced Mr. Perez to imprisonment for 30 months, and this appeal followed.
 
 II
 
 11
 A traffic stop is always permitted, in a context such as this one, if (1) there is probable cause to believe that a traffic offense has been committed, and (2) the stop is one that a reasonable officer would have made even without any suspicion of other offenses. United States v. Crotinger, 928 F.2d 203, 206 (6th Cir.1991); United States v. Bates, 840 F.2d 858, 860-861 (11th Cir.1988) (interpreting the "objectively reasonable" standard articulated in United States v. Smith, 799 F.2d 704, 708 (11th Cir.1986)). Our court has held that probable cause exists if the police have "information sufficient to warrant a reasonable man to believe that a crime has been committed." United States v. Pepple, 707 F.2d 261, 263 (6th Cir.1983). Factual findings with respect to probable cause and objective reasonableness are subject to review under the "clearly erroneous" standard. See United States v. Pino, 855 F.2d 357, 361 (6th Cir.1988), amended, 866 F.2d 147 (6th Cir.1989) (adding a concurring opinion by Jones, J.), cert. denied, 110 S.Ct. 1160 (1990); Pepple, 707 F.2d at 263.
 
 
 12
 In the case at bar the district court found that Officer Lombardi had probable cause to believe that the defendant had violated Ky.Rev.Stat. 189.300. That statute provides as follows:
 
 
 13
 "(1) The operator of any vehicle when upon a highway shall travel upon the right side of the highway whenever possible, and unless the left side of the highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty (150) feet ahead.
 
 
 14
 (2) The operator of any vehicle moving slowly upon a highway shall keep his vehicle as closely as practicable to the right-hand boundary of the highway, allowing more swiftly moving vehicles reasonable free passage to the left."
 
 
 15
 See also Ky.Rev.Stat. 177.300(3), a statute that prohibits drivers on limited access highways from driving "any vehicle except in the proper lane provided for that purpose...."
 
 
 16
 Defendant Perez, according to Officer Lombardi's testimony, was driving under the speed limit in a left lane of a limited access highway on which there were signs instructing drivers to keep to the right except when passing. The officer testified without contradiction that he had stopped people "[o]n several occasions" for the same violation in situations where he had no suspicion of drug-related activity. On these facts, we cannot say that the district court committed clear error in concluding that Officer Lombardi had probable cause to believe that a traffic offense had been committed and that a reasonable officer would have made the stop even without any suspicion of other wrongdoing.
 
 
 17
 Contending that the stop was a mere pretext, defendant Perez cites the following police radio transmissions, which began just before Officer Lombardi spotted the Perez vehicle:
 
 
 18
 "Officer [Unknown]: Check on Lombardi.
 
 
 19
 Officer [Lombardi]: Go ahead.
 
 
 20
 Officer [Unknown]: You after that black Monte Carlo?
 
 
 21
 Officer [Lombardi]: I didn't have my thing on him. I didn't get a speed on him, but, uh it looked like a pretty good one.
 
 
 22
 Officer [Lombardi]: I've got another one in front of me with a Florida plate. He's got scanners, radar detectors, CBs, two male Hispanics.
 
 
 23
 Officer [Unknown]: I'll do a flip and catch up with you."
 
 
 24
 Nothing in this exchange persuades us that any hunch Officer Lombardi may have entertained about drug-running foreclosed a stop that would have been objectively reasonable in the absence of such a hunch. See the Eleventh Circuit's well-reasoned opinion in United States v. Bates, where the court stated:
 
 
 25
 "Bates asks this court to interpret the Smith rule as differentiating a stop based solely on a traffic violation and one based on both a violation and a hunch of other illicit activity. That interpretation would directly controvert the Smith holding. In Smith this court articulated the standard for pretextual stops in terms of ' "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," and not on the officer's actual state of mind at the time the challenged action was taken.' Here, Bates clearly violated a traffic regulation of Georgia; consequently, Officer Bentley's actions were objectively justifiable." 840 F.2d at 860 (citations omitted).
 
 
 26
 In the case at bar, similarly, Officer Lombardi had probable cause to believe that Mr. Perez had committed a traffic violation; the stop was thus objectively reasonable. Accordingly, and regardless of the officer's "actual state of mind" or "hunch of other illicit activity," the district court did not err in concluding that the stop was permissible.
 
 
 27
 By the time the car was searched for drugs, Officer Lombardi had ample grounds to conduct such a search. The car had Florida license plates, and Florida is a major drug source; I-75 is a known drug courier route; the car was equipped with electronic equipment of a sort useful to drug couriers; Mr. Perez got out of the car immediately upon stopping rather than waiting for Officer Lombardi to come to the window of the car and look in; in the back seat of the car was an air freshener, which the officer testified can be used to mask the smell of marijuana; in declining to consent to a search, the defendant candidly acknowledged that this was "how [he] got caught last time;" and and a drug-detecting dog "alerted" to the vehicle. Viewing these and other data as a whole, any reasonable police officer would think it probable that a search of the car would disclose the commission of a crime. The warrantless search was reasonable, see Crotinger, 928 F.2d at 205, and the defendant's Fourth Amendment rights were not violated.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation