**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Adell CARTER and Mary Bailey Jones,**
**Defendants-Appellants.**

**No. 74–3815.**

United States Court of Appeals,
Fifth Circuit.

July 28, 1975.

---

Floyd M. Buford, Macon, Ga., for defendants-appellants.

Ronald T. Knight, Macon, Ga., Charles T. Erion, Asst. U. S. Atty., for plaintiff-appellee.

Before COLEMAN, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellants Carter and Jones were convicted for the misdemeanor of possessing approximately 1,035 pounds of sugar intended for use in violating the laws prohibiting the manufacture and sale of

nontaxpaid alcoholic spirits, 26 U.S.C. § 5601 *et seq.*[1] They appeal on the sole ground that the trial court erroneously admitted evidence of five previous illicit liquor offenses by Carter, all of them committed ten years or more prior to the trial below.

Uncontradicted evidence showed that while under observation by agents of the Bureau of Alcohol, Tobacco and Firearms, United States Treasury Department, and a Georgia State Alcohol and Tobacco Tax agent, Carter and Jones visited one supermarket after another in the City of Macon, purchasing sugar at each one. The agents stopped their car as they returned to the vicinity of Carter's residence. A subsequent search without a search warrant disclosed 1,035 pounds of sugar in variously sized bags and bales in the trunk and on the back seat and front floorboard of the car.

As part of the government's case in chief, and over defense counsel's strenuous objections, the prosecution offered evidence of five prior liquor law violations by Carter. These documents showed a plea of guilty in May 1941 to two counts of possession and transportation of nontaxpaid whiskey; a plea of guilty in October 1944 to one count of possession of nontaxpaid whiskey; a plea of guilty in October 1949 to several counts involving carrying on a distillery business, possession of a still and the possession and transportation of nontaxpaid whiskey; a Georgia state indictment and sentence for manufacturing whiskey in November 1954; and a plea of guilty in July 1965 to the sale of nontaxpaid whiskey. This evidence of prior convictions was offered by the government solely for the purpose of establishing Carter's specific intent to use the sugar to violate the internal revenue liquor laws.

Except for Carter's past history of violating liquor laws and the amount of sugar purchased, there was very little evidence which even remotely suggested that the sugar was intended for use in making moonshine. An agent testified that he saw Carter covering up the sugar in the back seat of his car with some kind of cover; from this the jury might infer an illicit purpose of some kind. However, there was no evidence whatsoever to link Carter or Jones with any ongoing illicit liquor operation.

Furthermore, as described by the agents, their movements throughout the afternoon were not secretive. They were observed at seven stores during the afternoon. From a distance, the agents were able to identify their purchases from the brand name markings on the bags of sugar. In addition to the pattern of their sugar purchases, the evidence showed only that Carter made a telephone call from a pay phone booth at one shopping center, and that they turned onto a dirt road for three to four minutes between visits to two of the stores. They were cooperative with the agents when they were arrested.

Neither Carter nor Jones testified at trial, and the defense offered no other evidence. On cross-examination and in his closing argument, defense counsel pointed out that the arrest was made at a time when the price of sugar was rising rapidly, as a result of which many grocery stores placed limits on the quantity of sugar customers were allowed to buy. Furthermore, he noted that large amounts of sugar were necessary to preserve and can fruits, suggesting that there were other reasons for possessing a thousand pounds of sugar than to make moonshine.

Our prior decisions have established several factors to be considered in deciding whether a district court has abused its discretion in admitting evidence of prior crimes. The leading case of *Weiss v. United States*, 122 F.2d 675, 682 (5th

---

1. Although not specifically stated in the information filed by the United States Attorney, Carter and Jones were prosecuted under 26 U.S.C. § 5686(a), which makes it a misdemeanor "to have or possess any liquor or property intended for use in violating any provision of this chapter [Chapter 51, Title 26, United States Code] or regulations issued pursuant thereto, or which has been so used."

Cir. 1941), *cert. denied*, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550, states,

> The general rule is that evidence of another crime unconnected with the one on trial is inadmissible, but this rule is subject to a number of exceptions, the first of which is that evidence of other offenses by the accused is admissible to show his criminal intent as to the offense charged, where the other offenses are similar to and not too remote from that charged, and where intent is in issue as an element of the offense charged.

■ In this case, the specific intent to violate the internal revenue liquor laws, 26 U.S.C. § 5601 *et seq.*, is an essential element of the offense. The five prior offenses admitted into evidence are "similar to" the offense charged in that they show a repeated pattern of violating laws regulating the manufacture and taxation of liquor. *See United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973). However, in the present case we pretermit that issue, and focus on the remoteness element, since it is of the most serious concern. Carter's criminal record introduced at trial spanned a period of twenty-three years, yet the most recent offense to which he pled guilty had been committed over ten years before his trial for possession of sugar.[2]

The district court took into consideration the balancing approach which has been consistently applied in this circuit in determining questions of admissibility of prior crime evidence. It relied upon *United States v. Miller*, 500 F.2d 751 (5th Cir. 1974), wherein the three "crucial elements" in the balancing process were succinctly set forth: "the government's actual need for the evidence, the probative value of the evidence, [and] the potential prejudice to the accused." The district court concluded that the government had an actual need for the evidence here and that the remoteness of the convictions was sufficiently counterbalanced by the repetitive pattern they

revealed to give them probative weight. Acknowledging that prejudice to the accused was a factor, it nevertheless admitted the evidence and gave proper cautionary instructions to the jury to consider the evidence only as it related to the question of Carter's intent.

■ The district court relied upon well-established law in this circuit in using the balancing approach. *See, e. g., United States v. San Martin*, 505 F.2d 918, 922 (5th Cir. 1974); *United States v. Cavallino*, 498 F.2d 1200 (5th Cir. 1974); *United States v. Miller*, 500 F.2d 751, 762 (5th Cir. 1974); *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974); *United States v. Boyd*, 446 F.2d 1267 (5th Cir. 1971). However, we view the factor of the prosecution's need for the evidence with particular caution in this case because the appellants were accused of an offense consisting of an essentially innocent act, the possession of sugar, which is converted into a criminal misdemeanor solely by their subjective intent in possessing the substance; furthermore, there was virtually no evidence of their intent, other than Carter's criminal record. The lack of independent evidence of the appellants' intent would seem to make the factor of the government's need for the evidence weigh heavily on the balancing scales. However, under these circumstances, the risk is particularly great that the jury was unfairly prejudiced and that the appellants were found guilty primarily, if not exclusively, because of wrongdoings long past. This risk is the policy behind the general rule of inadmissibility of other crime evidence. That policy, rather than balancing formulas and categorical exceptions, should in the last analysis control trial and appellate court decisions as to the admissibility of other crime evidence. *See United States v. Miller, supra*, 500 F.2d at 762–763.

Our principal concern, however, is the remoteness of Carter's criminal record, which goes to the probative value of the

2. Carter pled guilty in July 1965, a little over nine years from his October 1974 trial. However, the records of the district court show that the accusation to which he pled guilty was allegedly committed in June 1964.

evidence. In *Lloyd v. United States,* 226 F.2d 9, 18 (5th Cir. 1955), this Court said, "Evidence of other wrongful acts to prove intent . . . must logically tend to prove the defendant's criminal intent at the time of the commission of the act charged." Under this test, offenses nine and ten years earlier were held to be too remote in time to have probative value in *United States v. San Martin,* 505 F.2d 918, 922 (5th Cir. 1974). However, in that case the earlier offenses were committed when the defendant was 17 and 18 years old, respectively. The immature judgment of those years was clearly a factor in concluding that the earlier offenses lacked probative value regarding the defendant's intent in committing acts ten years later. Carter, on the other hand, was 64 years old at the time of his 1974 trial for possession of sugar. Thus, even the oldest of the prior offenses, in 1941, dates back to his adult years. Furthermore, the repetitive although sporadic pattern of five similar offenses over a twenty-three year period from 1941 to 1964 lends some credence to their being probative of his intent in 1974.

■ Nevertheless, these facts cannot be taken to completely neutralize the ten year gap between the last of Carter's series of illegal whiskey violations and his trial below. Even a man well past middle age can mend his ways.[3] Given the very prejudicial nature of other crime evidence, a defendant is entitled to some benefit of the doubt when he has no recorded brushes with the internal revenue liquor laws for ten years. Therefore, the probative value of Carter's criminal record was considerably diminished by the ten year hiatus, to such an extent that it was outweighed by the prejudice to Carter resulting from its admission.

■ We must also decide whether the admission of Carter's prior offenses was prejudicial to Jones. No prior offenses were introduced against her, and the dis-

trict court specifically instructed the jury at the time Carter's offenses were admitted that the documents were admitted solely for the purpose of its consideration of Carter's intent. Even so, the two appellants were closely tied together by all the evidence, they were acting in concert, and they presented a unified defense. The damage to Carter from the introduction of the other crime evidence was so serious that it would be virtually impossible for it not to have had a prejudicial effect on the jury's deliberations of the charge against Jones. Therefore, Jones' conviction must also be reversed. *Hamilton v. United States,* 409 F.2d 928 (5th Cir. 1969); *Cucchia v. United States,* 17 F.2d 86 (5th Cir. 1927).

■ Without the evidence of Carter's record of previous illegal whiskey offenses, the evidence of Carter's and Jones' specific intent in this case was insufficient to support the verdict of guilty. This is not a case such as *United States v. Brown,* 419 F.2d 1106, 1108 (5th Cir. 1969), where we would be "farcically naive" to assume that their possession of sugar was innocent. They purchased the sugar in broad open daylight from supermarkets open to the general public. They did not move about surreptitiously. They did not try to flee when they were arrested.

On this record, the jury could not reasonably have concluded that the evidence excluded every reasonable hypothesis save that of guilty. *Williams v. United States,* 361 F.2d 280, 283 (5th Cir. 1966).

We note the following cases where the circumstantial evidence held sufficient to support a conviction wove a far more convincing picture of guilt than did the evidence below: *United States v. Johns,* 421 F.2d 413 (5th Cir. 1970), *cert. denied,* 397 U.S. 1041, 90 S.Ct. 1362, 25 L.Ed.2d 652; *United States v. Brown,* 419 F.2d 1106 (5th Cir. 1969), *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1261, 25 L.Ed.2d 531; *United States v. Chapman,* 413 F.2d 440 (5th Cir. 1969), *cert. denied,* 396 U.S. 903,

---

3. As Judge Rives said in *Baker v. United States,* 227 F.2d 376, 378–79 (5th Cir. 1955) (concurring opinion), "Our law makes some allowance for the possibility of reform, and does not yet say 'once a moonshiner, always a moonshiner.'"

90 S.Ct. 217, 24 L.Ed.2d 180; *Harper v. United States,* 344 F.2d 903 (5th Cir. 1965); *Skinner v. United States,* 272 F.2d 607 (2d Cir. 1959), *cert. denied,* 362 U.S. 902, 80 S.Ct. 611, 4 L.Ed.2d 555.

■ Having determined that the evidence of Carter's previous guilty pleas should not have been admitted and that the remaining evidence would have been insufficient to sustain a conviction, we must now determine whether Carter and Jones are to be retried. Both appellants made a motion for a directed verdict of acquittal at the close of the government's case. Neither made a motion for a new trial after the verdicts of guilty. Under these circumstances, we believe that *United States v. Musquiz,* 445 F.2d 963 (5th Cir. 1971), controls our disposition and makes a retrial inappropriate. *See also, In re Joyce,* 506 F.2d 373, 379 (5th Cir. 1975); *United States v. Peterson,* 488 F.2d 645, 651 (5th Cir. 1974); *United States v. Blake,* 488 F.2d 101, 107 (5th Cir. 1973); *United States v. Restano,* 449 F.2d 485, 488 (5th Cir. 1971). Accordingly, we reverse the appellants' convictions and remand with directions to dismiss the indictments.