**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jimmy Coy POLLOCK,**
**Defendant–Appellant.**

**No. 89–8795.**

United States Court of Appeals,
Eleventh Circuit.

March 15, 1991.

---

**41.** Ala.Code § 9–11–80(a).

**42.** See, District Court, at 22–23.

**43.** 231 Ala. 408, 165 So. 219 (1936).

**44.** *Id.* at 408, 165 So. at 220.

Christina L. Hunt, Macon, Ga., for defendant-appellant.

Deborah A. Griffin and Michael T. Solis, Asst. U.S. Attys., Macon, Ga., for plaintiff-appellee.

Before CLARK and BIRCH, Circuit Judges, and COFFIN *, Senior Circuit Judge.

COFFIN, Senior Circuit Judge:

This appeal challenges convictions for conspiracy to possess with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. § 846, for possession with intent to distribute the same, in violation of 21 U.S.C. § 841(a)(1), and for aiding and abetting travel in interstate commerce to carry on an unlawful drug business enterprise, in violation of 18 U.S.C. § 1952 ("the Travel Act"). Appellant was sentenced to 120 months imprisonment for each of the first two offenses and 60 months for the third, all to run concurrently. The issues are whether the district court erred in denying a motion to suppress, whether it erred in denying a motion in limine to exclude evidence of a prior drug offense conviction, and whether there was sufficient evidence to support the three guilty verdicts. We affirm the conspiracy and possession convictions, but reverse the Travel Act conviction.

### The Facts

Around noon on January 31, 1989, Georgia State Trooper Patrick, after working the midnight shift and making a state superior court appearance in the forenoon, was driving to his home in Macon, Georgia, when he noticed a vehicle solely occupied by appellant weave two or three times across the yellow line setting off the shoulder from the travelled portion of the highway. Trooper Patrick stopped the vehicle, asked appellant why he was weaving, and, receiving no response, proceeded to write out a warning. After being told by the trooper that he was being given a warning for weaving, appellant became more, rather than less, nervous—a fact that aroused the trooper's suspicion. Suspicion increased with the trooper's observations that the vehicle, although assertedly rented from National Car Rental, displayed an idiosyncratic "Keep On Truckin' " tag on the Florida license plate frame, while a National Car Rental identification tag lay on the floor by the front seat on the driver's side. The trooper also noted the presence of a CB radio antenna and a radar detector.

During this time appellant told of his plan to drive to Stone Mountain, Georgia, and to return the next day to Miami, Florida. Trooper Patrick reflected to himself that such a trip would take at least twelve hours, and further wondered why, for such a short stay, the clothes he had observed in the vehicle would be needed.

Trooper Patrick then asked if appellant would object to a search of the vehicle. Appellant answered in the negative and a written consent form was prepared by the trooper and executed by appellant. At this point, Trooper Patrick radioed for backup assistance, turned on a video camera in his vehicle, and waited for some fifteen minutes for help to arrive. After another officer arrived, the vehicle was searched. During that search, the two officers together applied pressure to opposite sides of the back seat and "popped" it. Under it they found two packages later determined to contain two kilograms of 87% pure cocaine, with an estimated street value of $1,000,000.

### The Motion to Suppress

Appellant, before trial, moved to suppress the evidence of cocaine obtained from the search on the ground that the stop was pretextual, the real (and con-

tion.

---

* Honorable Frank M. Coffin, Senior U.S. Circuit Judge, for the First Circuit, sitting by designa-

cealed) basis being appellant's fitting the profile of a drug courier. The court, after hearing, ruled as follows:

> The evidence indicates that the officer observed a weaving vehicle; Mr. Pollock denies that he was weaving. If you've ever had the experience of becoming tired and weaving a vehicle, you're not aware of the fact that you're weaving or you wouldn't let it occur.... It's like going to sleep; you don't realize that you're asleep, when you doze off. So, I find no basis to discredit the officer's testimony that he observed the defendant to be weaving. Likewise, there's no basis to believe the defendant over the officer. That being the situation, in my best judgment, he had more than reasonable suspicion to base a request to search upon and consent was given freely and voluntarily, according to the defendant.

This case is a far remove from *United States v. Miller*, 821 F.2d 546 (11th Cir. 1987), relied on by appellant, where the trooper's testimony was that a "stop would have been made ... whether or not there was a traffic violation." *Id.* at 549. Here there was adequate support for concluding that the stop was based on an "objective violation of a statute for which the patrol regularly made stops, with or without suspicion of drug-related activity." *United States v. Bates*, 840 F.2d 858, 861 (11th Cir.1988). That the court's finding of voluntariness also was clearly supported is indicated by the discussion and precedents collected in *United States v. Garcia*, 890 F.2d 355 (11th Cir.1989). The court did not err in denying the motion to suppress.

### The Motion in Limine: Prior Conviction

■ Appellant, advised that the government planned to introduce evidence of his prior conviction for conspiracy to import marijuana, moved in limine to exclude it as purely character evidence not falling within any of the exceptions of Fed.R.Evid. 404(b).[1] The government responded with a memorandum invoking the bellwether Fifth Circuit case, *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978),[2] and later Eleventh Circuit cases. Thereafter, appellant couched his argument to the district court almost entirely in terms of remoteness. Appellant had been convicted by jury verdict on September 10, 1983; the events with which we are here concerned occurred on January 31, 1989, almost five years and five months later. His counsel argued that a period "some six years back" was "too remote in time for it to have any bearing on what we're doing here today." When asked by the court whether a prior conviction only one year old would be admissible, counsel responded, "Your Honor, I think it's possible it would be under the present case law." Counsel then cited *United States v. Jimenez*, 613 F.2d 1373 (5th Cir. 1980), which involved the admission of evidence of an extrinsic offense allegedly committed a year *after* the charged offense, and referred to Fed.R.Evid. 609(b), which presumptively bars evidence of convictions over ten years old when used to impeach a witness's credibility. Only at the very end of argument did counsel briefly urge the court to find the prior conviction evidence irrelevant as being "clearly character evidence."

■ Although the prior conviction in this case was over five years old, appellant bears a heavy burden in demonstrating an abuse of the court's "broad discretion in determining if an extrinsic offense is too remote to be probative." *United States v. Terebecki*, 692 F.2d 1345, 1349 (11th Cir. 1982). Some guidance as to the outer limits of discretion is afforded by the opinion in *Beechum*, 582 F.2d at 915, which, after noting that "temporal remoteness depreciates the probity of the extrinsic offense,"

---

1. Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

2. Decisions of the "Old Fifth" as of September 30, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

refers to *United States v. Carter,* 516 F.2d 431, 434–35 (5th Cir.1975). The court in *Carter* held that a ten year gap since defendant's last liquor law infractions so diminished probativeness in relation to prejudice that evidence of them ought to have been excluded. *Carter* in turn refers to *United States v. San Martin,* 505 F.2d 918 (5th Cir.1974), where the court, in holding that convictions for interfering with a police officer that were nine and ten years old were too remote to be probative, observed that "prior crimes involving deliberate and carefully premeditated intent—such as fraud and forgery—are far more likely to have probative value ... than prior crimes involving a quickly and spontaneously formed intent—such as assault in the case before us." *Id.* at 923. Neither case can give appellant much comfort.

Nor has appellant pointed us to any relevant authority drawing the remoteness line short of the lapse of time in this case. Indeed, decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value. We note that lapses of approximately five years were not deemed beyond the pale in *United States v. Bennett,* 848 F.2d 1134, 1137 (11th Cir.1988), and *United States v. Zeidman,* 540 F.2d 314, 319 (7th Cir.1976). And the Ninth Circuit has even upheld the admission of evidence of closely similar offenses that had occurred ten and thirteen years earlier than the charged offense. *See United States v. Spillone,* 879 F.2d 514, 519 (9th Cir.1989); *United States v. Ross,* 886 F.2d 264, 267 (9th Cir.1989). We cannot hold, on this record, that the district court abused its discretion in refusing to exclude evidence of appellant's prior conviction on the ground that it was so remote that, in the words of Fed.R.Evid. 403, "its probative value is substantially outweighed by the danger of unfair prejudice."

■ On appeal, appellant places more emphasis on the argument that the threshold test of Rule 404(b), relevancy, is not met because the fact of the prior drug conviction, standing alone, could have no bearing on the question whether appellant knew that cocaine was located in the rented car. Without some development of factual similarities in the two conspiracies, evidence of the prior conviction, he argues, goes only to his propensity to commit such crimes.

"Propensity" connotes such an endemic part of character as "natural inclination" or "inherent tendency," *Webster's Third New International Dictionary* 1817 (1966). Proof that one is a bad man generally is not, under our system, admissible to prove that one committed a specific bad act for which there is no or little other proof. But what appears to one person as propensity may be intent to another; the margin between is not a bright line.

*Beechum* tells us that it is appropriate to make a connection between the prior conviction and charged offense in this case. It is true that the particular details of the prior act were presented in *Beechum.* In that case, the extrinsic evidence—that defendant had possessed for some time in his pocket two credit cards belonging to others that had been sent in mail he was supposed to deliver—was clearly relevant to defendant's assertion that he fully intended to return a silver dollar which had been missing from the mails and also wound up in his pocket. As the court observed, "[t]he obvious question is why would Beechum give up the silver dollar if he kept the credit cards." 582 F.2d at 909. But the court in *Beechum* with marked deliberateness held that, "[o]nce it is determined that the extrinsic offense requires the same intent as the charged offense ... [it] is relevant ... to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent." *Id.* at 913. Further similarity between the charged and extrinsic offenses goes only to probative value. *Id.*

■ We previously have noted the special difficulty of proving intent in conspiracy cases, *United States v. Glen–Archila,* 677 F.2d 809, 816 (11th Cir.1982) (citing *United States v. Roberts,* 619 F.2d 379, 382–83 (5th Cir.1980) (in every conspiracy case a not guilty plea makes intent a mate-

rial issue, permitting evidence of extrinsic offenses probative of a defendant's state of mind unless intent is affirmatively taken out of the case)). *See also United States v. Kopituk*, 690 F.2d 1289, 1334–35 (11th Cir.1982). It is here, in an effort to illumine a defendant's present state of mind with the baleful glow of the light of a prior conviction for an offense requiring the same state of mind, that *Beechum* and its progeny come into play. One corollary principle of *Beechum*, 582 F.2d at 914, is that "[i]t is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice.... Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily." In other words, if the government can do without such evidence, fairness dictates that it should; but if the evidence is essential to obtain a conviction, it may come in. This may seem like a "heads I win; tails you lose" proposition, but it is presently the law. In this case, because of the limited evidence of conspiratorial intent, the prior convictions were that much more probative.

In any event, notwithstanding the hazard of an impermissible blending of propensity and intent from a less intense focus on the particulars of similarity between extrinsic and charged crimes, the precedents in this circuit allowing evidence of prior drug-dealing offenses in drug conspiracy prosecutions are ample. *See, United States v. Hernandez*, 896 F.2d 513 (11th Cir.1990); *United States v. Cardenas*, 895 F.2d 1338 (11th Cir.1990); *United States v. Bennett*, 848 F.2d 1134 (11th Cir.1988); *United States v. Dorsey*, 819 F.2d 1055 (11th Cir. 1987); *United States v. Richardson*, 764 F.2d 1514 (11th Cir.1985); *United States v. Carter*, 760 F.2d 1568 (11th Cir.1985); *United States v. Montes–Cardenas*, 746 F.2d 771 (11th Cir.1984); *United States v. Corbin*, 734 F.2d 643 (11th Cir.1984). The district court in the case at bar was faithful to this caselaw.

### The Sufficiency of the Evidence

Appellant's motion for acquittal properly raised the issue of evidentiary sufficiency as to each of the three counts on which he was convicted. Although we are to take facts and reasonable inferences therefrom in the light most favorable to the government, the government nevertheless must produce enough evidence to allow a jury to find guilt beyond a reasonable doubt of each element of the charged offense. *United States v. Monroe*, 866 F.2d 1357, 1365 (11th Cir.1989).

### A. The Conspiracy Count.

■ To prove conspiracy, the government must show an agreement by two or more persons to commit a crime, defendant's knowledge of that agreement, and his voluntary joinder in the enterprise. *Monroe*, 866 F.2d at 1365. In this case, on this count, we find the evidence far from overwhelming, but sufficient.

First, appellant introduced evidence that a latent fingerprint, not his own, appeared on one of the packages of cocaine. This permits the inference that someone helped appellant prepare for his journey. Second, the fact that cocaine seized was worth up to $1,000,000 at street value, in conjunction with testimony by appellant's wife that he was but an apprentice mechanic, would allow a jury to infer that appellant did not acquire the contraband alone but was working with or for others. *See United States v. DeWeese*, 632 F.2d 1267, 1272 (5th Cir.1980) (illogical to believe that one person would attempt to smuggle eight million dollars of marijuana from Colombia to United States without assistance).

A third piece of evidence, based partly on testimony and partly on the videotape of the search of the vehicle, was that the removal of the back seat required the vigorous joint effort of two officers. A reasonable inference is that two persons assisted in installing the seat after the cocaine was positioned. A fourth bit of evidence, although slight, is the testimony of the National Car Rental clerk who rented the vehicle to appellant in Miami. On cross examination she testified, when asked if appellant had come with someone, "It's possible. There was more than one person

in the return area when he rented the car." On being pressed to say whether the person was with appellant, she stated, "There was another person at the counter but I can't—you know, I don't remember if he was exactly with him or not."

The final bit of evidence, of course, was that of appellant's prior convictions in 1983 of the crimes of importation, possession with intent to distribute, and conspiracy to import marijuana, which shed light on appellant's intent in this case. Accordingly, in light of these factors, together with the "incremental probity" of the evidence of extrinsic crimes in an otherwise marginal case for the prosecution, we conclude that there was sufficient evidence to support the conviction for conspiracy.

### B. *Possession with intent to distribute.*

■ To prove the substantive offense, the government had to show that appellant knowingly possessed the cocaine and that he intended to distribute it. *See United States v. Cruz–Valdez,* 773 F.2d 1541, 1544 (11th Cir.1985). The most significant evidence supporting his knowing possession with intent to distribute is the large value of the cocaine. A jury reasonably could conclude that no drug smuggler would entrust a shipment worth a million dollars to an outsider. *See Cruz–Valdez,* 773 F.2d at 1546–47 ("[W]e think it reasonable for a jury to conclude that in the course of transporting or distributing millions of dollars worth of readily marketable [contraband], through channels that wholly lack the ordinary protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders."). *See also United States v. Battle,* 892 F.2d 992, 1000 (11th Cir.1990) (drug smuggler unlikely to put cocaine valued at $1,000,000 on a plane over which he could exercise no control). The large amount of the cocaine also is evidence that it was intended for distribution.

A jury also justifiably could take into account the following additional evidence. First, the fact that the National Car Rental identification had been taken off the front of the car and that a "Keep On Truckin'" label had been superimposed on the Florida license could have led the jury, as it did the trooper, to believe that appellant wanted to conceal the fact of rental on the assumption that a rental car comported more with the profile of a drug courier. Second, the fact that, although appellant's wife testified that appellant was an apprentice mechanic, appellant told the trooper that he was a salesman may have added to the jury's inference of guilty dissimulation. Third, of similar effect could have been the fact that although appellant said that his destination was a wedding, the trooper observed no wedding gift or invitation in the car. Fourth, in a somewhat different category are the facts that appellant was equipped with a CB antenna, a radar reflector, and, in the trunk, tools and an air compressor which would enable him to deal with such eventualities as flat tires quickly and independently. While admittedly capable of an innocent explanation, they could also be taken by the jury as indicia of a guilty desire to avoid surveillance by the police and to achieve maximum self-sufficiency. Finally, the jury was entitled to consider the evidence of appellant's prior convictions as bearing on his state of mind. We therefore conclude that there was sufficient evidence to support appellant's conviction for possession with intent to distribute.

### C. *The Travel Act.*

■ Appellant's conviction under Count III was based on violation of 18 U.S.C. § 1952, commonly known as the Travel Act. This statute prohibits interstate travel to "promote, ... carry on, or facilitate ... any unlawful activity." "Unlawful activity" is further defined as "any business enterprise involving ... narcotics." Appellant, citing *United States v. Bates,* 840 F.2d 858 (11th Cir.1988), contends that the evidence of his travel from Florida to Georgia could not establish the kind of continuous course of conduct required to establish "business enterprise," as contrasted with only casual and sporadic drug involvement.

*Bates* reaffirmed the law of this circuit that proof of continuous conduct is required. The *Bates* court found such proof

 

not made out by an unusually high odometer reading, the facts that defendant was carrying a large amount of cash and that there were traces of cocaine found in a concealed compartment in the glove box, and the ambiguous statement, " '[t]his is the first time I carried the weapon and the cocaine.' " 840 F.2d at 863. *Bates* contrasted such evidence with that found sufficient in *United States v. Davis*, 666 F.2d 195, 202 (5th Cir. Unit B 1982): "In this case one methaqualone transaction was proved, but the evidence as a whole showed that Mr. Davis and Cochran had for some time engaged in a continuous business relationship in illegal drug trafficking." *Cf. United States v. Lignarolo*, 770 F.2d 971, 979 (11th Cir.1985) (not isolated sales but "a massive and excessively profitable marijuana operation"). *See also United States v. Perez*, 700 F.2d 1232 (8th Cir.1983) (one isolated incident insufficient).

The government seems to us to have overplayed its hand in urging and defending conviction on this count. It relies principally on the evidence of the five-plus year old conviction, arguing that it permitted the inference that appellant knew something about the drug trade and its mechanics. Not only does this contention seek to spread the use of extrinsic crimes significantly beyond shedding light upon the single element of intent, but, even if the inference were proper, being familiar with the mechanics of the drug trade is a far cry from establishing that one has been engaging in a continuous course of drug business activity. Moreover, the very fact that the prior convictions were accompanied by four year prison terms pretty clearly evidences the absence of continuing activity for much of the intervening period. The presence of such suspicion-engendering facts as the attempt to disguise the rented nature of the vehicle and the carrying of police-alerting equipment and tools to enable quick repair supports, as we have indicated, the conviction for possession with intent to distribute, but, as in *Bates*, falls short of proof of a continuous course of conduct of drug trafficking.

The convictions for possession with intent to distribute and for conspiracy to possess and distribute cocaine are AFFIRMED. The conviction for violation of the Travel Act is REVERSED.