[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10350
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00061-JRH-BKE-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FAWAD SHAH SYED,
a.k.a. Daniel,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 17, 2015)

Before HULL, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Fawad Syed appeals his convictions and total 294-month sentence for one count of attempted online enticement of a minor, in violation of 18 U.S.C. § 2422(b); one count of destruction of records, in violation of 18 U.S.C. § 1519; and one count of attempted destruction of records, also in violation of 18 U.S.C § 1519.

On appeal, Mr. Syed contends that (1) the evidence was insufficient to show he took a substantial step toward violating § 2422(b); (2) the prosecutor committed misconduct warranting a new trial by misstating the law regarding § 2422(b); (3) the district court abused its discretion by admitting evidence of his prior online communications with two minors under Fed. R. Evid. 404(b)(2); and (4) the district court erroneously sentenced him by applying an enhancement under U.S.S.G. § 4B1.5(b)(1) for a pattern of prohibited sexual conduct. For the reasons that follow, we affirm.[1]

## I

Mr. Syed became the subject of an undercover law enforcement operation after a member of the FBI's Cybercrimes and Computer Exploitation Task Force posed as a 14-year-old female named "Samantha" on a mobile-based chat network. The chat network allowed users to communicate via the Internet using mobile

---

[1] Mr. Syed does not challenge his two § 1519 convictions or sentences, other than to argue in passing that the errors related to the § 2422(b) conviction infected the entire district-court proceeding. If we were to grant a new trial or resentencing on the § 2422(b) conviction, Mr. Syed argues that we should also grant a new trial or resentencing on the two destruction-of-records counts. Because we affirm the § 2422(b) conviction and sentence, Mr. Syed's request for relief on the § 1519 counts is denied as moot.

2

phones or other devices.  The investigator used a photo of one of his female colleagues, taken when that colleague was 14 or 15 years old, to create a profile on the chat network.

Mr. Syed, under the user name "Daniel," contacted the investigator posing as Samantha on February 8, 2013.  Samantha told Daniel that she was a 14-year old female who lived in Augusta, Georgia.  Daniel responded that he was a 23-year-old male who also lived in Augusta.  Daniel's chat network profile, however, said he was 31 years old.  In reality, Mr. Syed was 46 years old and married at the time.

Daniel asked Samantha for her phone number, and the two began sending one another text messages.  Both Daniel and Samantha used Google Voice—an Internet application that allows users to communicate via telephones—for text messaging.  The investigator determined that Daniel's phone number was associated with two names; one was fictitious, and the other was Mr. Syed.

Over the next four days, Daniel and Samantha texted one another.  Daniel's text messages never explicitly asked Samantha to have a sexual relationship, but he did send a number of text messages complementing Samantha's maturity, asking about Samantha's previous romantic or intimate experiences, and stating that if they ever wanted to get intimate in the future, it would be down the road.  He called her "sweetie" and "babe."  He asked about whom she lived with and told her

3

that he did not want her father or her friends to know about their communications. Daniel asked to speak with Samantha by phone, and one of the investigator's female colleagues posed as Samantha during the call.

Daniel asked several times when he and Samantha could meet. On February 11, 2013, Daniel and Samantha agreed to meet the next day at Samantha's apartment. Later on February 11, Daniel asked to meet Samantha late that night, saying that he was being spontaneous and called it a "good surprise." He offered to drink with her and wanted to see if they would "have the same chemistry in person as [they did] on the phone." Samantha agreed that Daniel could come over to her apartment, where she was alone at the time, and gave him directions.

Mr. Syed arrived at Samantha's apartment that night with his iPhone. In one hand, he held a grocery store bag containing a pint-sized can of beer and a six-pack of Mike's Lite Hard Lemonade, which he had purchased on the way. In the other hand, he held a can of pepper spray "with [his] finger on" the can. He also had three condoms in his pocket.

Authorities arrested Mr. Syed. He called his wife and asked her to remotely wipe his iPhone and to delete his Google account. A federal grand jury charged Mr. Syed with one count of attempted online enticement of a minor under § 2422(b), and two counts of destruction of records and attempted destruction of records, both under § 1519.

4

At trial, the government introduced evidence of two prior instances where Mr. Syed had purportedly committed the same crime. First, Mr. Syed's now ex-wife testified that she had met him in an AOL chat room in 2000 when she was 17 years old, that he used the fake name Daniel, that he lied about his age, and that they had sex on the first day they met, which was approximately one week after they had begun texting. Second, the government recovered chats from 2012 on Mr. Syed's computer between Mr. Syed and a 13-year-old female. In the conversations with the 13-year-old, Mr. Syed again lied about his age, asked her what her turn-ons were, told her that she sounded mature, called her "my love," discussed meeting in person, planned to meet in a cemetery, told her to come alone, and told her to delete her chat account before they met in person. Mr. Syed was upset after the 13-year-old female met him and then shortly left. He texted her that it was "not cool" that she had to leave and that he had borrowed his sister's van "for nothing." He then asked whether they could meet in the future.

Mr. Syed was convicted on all three counts by a jury less than one hour after the trial ended and deliberations began. The district court sentenced Mr. Syed to 294 months on the § 2422(b) conviction, and 240 months on each § 1519 conviction, all to run concurrently. He now appeals.

## II

Mr. Syed argues that the evidence was insufficient to prove that he took a substantial step toward violating § 2422(b) because, in his online communications with the investigator who posed as 14-year-old Samantha, he did not ask Samantha to have sex with him or try to persuade her to do so. He argues that a violation of § 2422(b) begins and ends online, because § 2422(b) criminalizes using the Internet as a tool to entice a minor to engage in sexual activity, but it does not criminalize using the Internet as part of an attempt to engage in sexual activity with a minor. Thus, Mr. Syed argues that his travel to meet Samantha was not a substantial step toward violating § 2422(b) because it did not occur online.

## A

We review challenges to the sufficiency of the evidence *de novo*, and ordinarily "ask whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (internal quotation marks and citation omitted). Where a defendant, however, "presents his case after denial of a motion for judgment of acquittal and then fails to renew his motion for judgment of acquittal at the end of all of the evidence, we review the defendant's challenge to the sufficiency of the evidence for a manifest miscarriage of justice." *Id.* (internal quotation marks, citation, and alterations omitted). Under the manifest miscarriage of justice

standard, we are required to affirm Mr. Syed's § 2422(b) conviction unless "the evidence on a key element of the offense is so tenuous that the conviction is shocking." *Id.* (internal quotation marks, citation, and alterations omitted). All evidence must be viewed in the light most favorable to the government, and we must accept all reasonable inferences and credibility determinations supporting the jury's verdict. *Id.*

The online enticement statute under which Mr. Syed was convicted states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b) (emphasis added).

A defendant may be convicted of an attempt under § 2422(b) based on conduct directed toward a fictitious minor. *See United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002), *superseded on other grounds as recognized in United States v. Jerchower*, 631 F.3d 1181, 1186-87 (11th Cir. 2011). To convict Mr. Syed of an attempt under § 2422(b), the government must have shown that Mr. Syed (1) had the required intent to commit the charged crime, and (2) took actions that constituted a "substantial step" toward the commission of the crime. *See United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007).

7

To prove intent under § 2422(b), the government must show "that the defendant intended to cause assent on the part of the minor, not that [the defendant] acted with the specific intent to engage in sexual activity." *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) (internal quotation marks and citation omitted). To prove the requisite conduct, the government must show "that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact." *Id.* The government shows that the defendant took a substantial step when the defendant's objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability." *Yost*, 479 F.3d at 819 (internal quotation marks and citation omitted).

We have explained that the very nature of persuading, inducing, or enticing engagement in unlawful sexual activity "necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010) (affirming the district court's sentence enhancements for § 2422(b)-type conduct because the defendant's chats instructed adults on how to molest young children and persuade the children to comply with the abuse). When determining whether the record supports a finding that the defendant took a substantial step in furtherance of a § 2422(b) violation, however, we look at the totality of the defendant's conduct. *See Lee*, 603 F.3d at 916.

8

**B**

We review Mr. Syed's sufficiency challenge only for a manifest miscarriage of justice because, while he moved for a judgment of acquittal on the § 2422(b) count at the close of the government's case, he failed to review his motion at the close of all the evidence. *See House*, 684 F.3d at 1196. Because Mr. Syed has not shown that the evidence on a key element of the crime—here, whether he took a substantial step—was so tenuous that his conviction was shocking, he has failed to meet his burden to show that a manifest miscarriage of justice occurred.

As previously stated, we apply a totality-of-the-circumstances analysis when determining whether a defendant has taken a substantial step toward violating § 2422(b). In prior cases, we have looked at both online and offline conduct, including a defendant's arrangement to meet a targeted minor and his arrival at the designated time and place. *See, e.g.*, *United States v. Lanzon*, 639 F.3d 1293, 1299 (2011); *Yost*, 479 F.3d at 819-20; *United States v. Murrell*, 368 F.3d 1283, 1288 (11th Cir. 2004); *Root*, 296 F.3d at 1228.

Mr. Syed is correct that he did not explicitly ask Samantha to have sex with him or explicitly indicate his desire to have sex with her. But looking at the totality of the circumstances, we do not believe that the evidence is so tenuous that his conviction is shocking. Mr. Syed (1) exchanged more than 1,000 messages

9

with Samantha over the course of several days, (2) employed "grooming" tactics,[2] which a law-enforcement expert testified at trial were common in child-exploitation cases, (3) arranged to meet Samantha alone at her apartment, and (4) arrived at Samantha's apartment carrying alcohol, condoms, and pepper spray.  A reasonable jury could have concluded that Mr. Syed took a substantial step, marking his actions as criminal and corroborating his intent to encourage Samantha to have sex with him.

We express no view as to whether, under a *de novo* review, a defendant violates § 2422(b) when his Internet communications do not explicitly ask the minor child for sex or indicate a desire to engage in sex with the minor.  We hold only that, where a defendant engages in online grooming techniques, such as the ones Mr. Syed used here, makes online arrangements to meet, and actually travels to see the minor child while carrying alcohol, condoms, and pepper spray, a defendant's conviction under § 2422(b) is not a manifest miscarriage of justice. *Cf. United States v. Cramer*, 777 F.3d 597, 602 (2d Cir. 2015) (holding that sentencing enhancement for use of a computer to entice a minor to engage in prohibited sexual conduct under U.S.S.G. § 2G1.3(b)(3) is proper even where the

---

[2] A law enforcement officer testified that "[g]rooming is behavior that's designed to either befriend or establish an emotional control with a young person to try to lower their inhibitions for the purpose of sexual assault or sexual exploitation of a child."  Grooming involves six techniques: (1) targeting a child; (2) gaining access to the child; (3) isolating the child from their friends and family; (4) fulfilling the child's emotional needs; (5) desensitizing the child to pornography or alcohol; and (6) controlling the meeting with the child to engage them in a sexually explicit activity.

10

"enticement itself does not take place using a computer"); *United States v. Lay*, 583 F.3d 436, 447 (6th Cir. 2009) (holding that § 2G1.3(b)(3) sentencing enhancement "may be applied even if the defendant did not send specific sexual requests by computer" because "[e]nticement does not require crude specification of intent").

## III

Mr. Syed contends that the prosecutor misstated the law when she argued during her opening and closing statements that his arrangements to meet and travel to see Samantha were a substantial step toward violating § 2422(b). Without these comments, he argues, there is a reasonable probability he would have been acquitted.

We review preserved prosecutorial misconduct claims *de novo*. *See United States v. Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011). Where the defendant fails to object at trial to an alleged instance of misconduct, however, we review only for plain error. *Id.* Under plain error review, a defendant must show that (1) an error occurred, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error "seriously affected the fairness of the judicial proceedings." *Id.* at 1268.

Mr. Syed did not object to the prosecutor's comments at trial. Thus, we review his prosecutorial misconduct claim for plain error. "It is the law of this

circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Here, the explicit language of § 2422(b) does not specifically address whether arrangements to meet and travel to see a minor child can be a substantial step toward violating the statute. Nor does the text expressly indicate that the online enticement of the minor need be sexually explicit or that the sexual propositioning must exclusively occur online. Further, neither the Supreme Court nor we have directly resolved this issue in Mr. Syed's favor. If anything, our prior precedent has acknowledged that offline conduct can form part of the basis for a substantial step. *See, e.g.*, *Lanzon*, 639 F.3d 1299; *Yost*, 479 F.3d at 819-20; *Murrell*, 368 F.3d at 1288; *Root*, 296 F.3d at 1228. Thus, there is no plain error.

## IV

Mr. Syed asserts that the district court abused its discretion in admitting evidence of his prior online communications with two females who were minors at the time: (1) his now ex-wife, with whom he communicated in 2000, when she was 17 years old; and (2) a 13-year-old female, with whom he communicated in 2012.

Mr. Syed acknowledges that the district court admitted his prior communications because they were probative of his intent and modus operandi.

12

He argues, however, that his communications with his ex-wife were too old to be probative of his intent, because people have changed the way they communicate online in the last 13 years. He contends that his communications with the 13-year-old female were not probative because they did not show that he intended to persuade her to have sex with him. Mr. Syed also asserts that modus operandi was not a valid justification for admitting the evidence because his identity was not at issue. Mr. Syed also maintains that the district court should have excluded evidence of both communications because their probative values were substantially outweighed by their unfair prejudicial effects.

## A

We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). A district court abuses its discretion when it "applies an incorrect legal standard or makes findings of fact that are clearly erroneous." *See United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Rule 404(b) evidence is not admissible unless (1) it is "relevant to one of the enumerated issues and not to the defendant's character," (2) "the prior act [is] be proved sufficiently to permit a jury determination that the defendant committed the act," and (3) "the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403." *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). A court may exclude relevant evidence under Rule 403 "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, [or] misleading the jury," among other reasons. Fed. R. Evid. 403.

We have recognized that Rule 403 is "an extraordinary remedy to be used sparingly." *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985). The rule "is meant to . . . permit the trial judge to preserve the fairness of the proceedings," but not to "permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none." *Id.* A district court's evidentiary ruling under Rule 403 is "reviewable only for clear abuse." *Id.*

In determining whether evidence is probative of a defendant's intent, a district court should consider the amount of time separating the extrinsic and charged offenses, as temporal remoteness depreciates the probative value of the

14

extrinsic evidence. *See United States v. Beechum*, 582 F.2d 898, 915 (11th Cir. 1978) (en banc). A district court, however, has broad discretion in determining whether an extrinsic offense is too remote to be probative. *See United States v. Pollock*, 926 F.2d 1044, 1047-48 (11th Cir. 1991) (holding that a five-year gap was not an abuse of discretion, but citing other cases where a 10-year gap was past the outer limits of the court's discretion). *See United States v. San Martin*, 505 F.2d 918, 922-23 (5th Cir. 1974) (explaining that, when introducing evidence of prior crimes to show intent, "[t]he test for remoteness . . . cannot[] be a simple rule of thumb based solely on the number of years that have elapsed" and that "prior crimes involving deliberate and carefully premeditated intent . . . are far more likely to have probative value with respect to later acts" than spontaneous crimes).

**B**

Here, the district court did not abuse its discretion in determining that Mr. Syed's prior online communications with his ex-wife and the 13-year-old female were relevant to his intent in the instant case.[3] The prior communications were relevant to Mr. Syed's intent to communicate with an actual minor child, as he met both his ex-wife and the 13-year-old female in person when they were minors. Although Mr. Syed does not dispute on appeal that he believed Samantha was

---

[3] Because we conclude that the district court did not abuse its discretion in admitting the evidence as relevant to Mr. Syed's intent, we need not decide whether it was also admissible as evidence of modus operandi.

15

actually a minor child, he disputed the issue at trial. In addition, the prior communications were probative as to whether Mr. Syed's intent in the instant case was merely to establish a friendship with Samantha, as he claimed at trial, or whether he was interested in establishing a sexual relationship after attempting to entice her.

First, Mr. Syed has not demonstrated that the district court abused its discretion in determining that his communications with his ex-wife were probative, notwithstanding the passage of time. *See Pollock*, 926 F.2d at 1047. Although the conversations may have been more than 10 years old, and methods of online communication may have changed, in both his communications with his ex-wife and Samantha Mr. Syed used the same false name (Daniel), lied about his age, and said he wanted to meet in person to see if they had "chemistry." Mr. Syed's communications with his ex-wife were particularly probative, in that, according to her trial testimony (but not Mr. Syed's), Mr. Syed had sex with her the day they first met, which was one week after they began communicating online.

Second, Mr. Syed has not shown that the district court abused its discretion in determining that his communications with the 13-year-old female were probative of his intent. While the communications did not explicitly solicit sex, they contained a discussion of sexual "turn-ons." The communications showed Mr. Syed had employed "grooming" tactics—including complimenting the minor

16

on her maturity, discussing the topic of sex, and seeking to meet her when she was alone—the same tactics Mr. Syed employed as Daniel with Samantha.

Given that both conversations were highly probative of Mr. Syed's intent, Mr. Syed has not shown that the district court committed clear abuse in determining that the probative value of the evidence was not substantially outweighed by the risk of undue prejudice. *See Meester*, 762 F.2d at 875. The district court explicitly considered the issue, determined that the evidence was highly probative, and ruled it should be admitted. The court also gave the jury a limiting instruction to minimize the risk of prejudice. In short, the district court did not abuse its discretion in admitting the evidence to show Mr. Syed's intent.

## V

At sentencing, Mr. Syed objected to a sentencing enhancement for a pattern of prohibited sexual conduct under U.S.S.G. § 4B1.5(b)(1), based on his communications with his then-minor ex-wife and the 13-year-old female. He argued that it would violate his Sixth Amendment rights to apply the sentencing enhancement when he was never convicted of a prior offense of prohibited sexual conduct. He conceded that his conversations with the 13-year-old female involved sexual turn ons, but he argued that they did not discuss meeting to have sex. The district court overruled Mr. Syed's objection, finding that his conduct with the 13-year-old female and his then minor ex-wife both satisfied the enhancement's

17

requisites.  With the five-level enhancement, Mr. Syed had a total offense level of 39, a criminal history category of I, and a resulting Guidelines range of 262-327 months.  The district court sentenced Mr. Syed to a total of 294 months.

On appeal, Mr. Syed argues that the district court erred by concluding that his prior communications with his then minor ex-wife and the 13-year-old female were prior instances of prohibited sexual conduct under § 4B1.5(b)(1) enhancement.[4]  Mr. Syed concedes on appeal that his initial interactions with his then-minor ex-wife might have constituted some crime, but he argues that they were not the crime of online enticement of a minor.  Regarding the 13-year-old female, Mr. Syed argues that his communications were not a prior occasion of online enticement with a minor because he did not try to persuade her to have sex with him.  "At most, there was evidence of one prior instance of prohibited sexual conduct," but he argues that is insufficient to be a pattern.

We review purely legal questions involving the Sentencing Guidelines issues *de novo*, factual findings for clear error, and the district court's application of the Guidelines to the facts with due deference.  *See Rothenberg*, 610 F.3d at 627 (holding that the "due deference" standard is subject to clear error review) (internal quotations omitted).  For clear error to exist, we "must be left with a definite and

---

[4] Mr. Syed does not argue on appeal that the district court violated his Sixth Amendment rights by applying the § 4B1.5(b)(1) enhancement for conduct that did not result in an actual conviction.  Thus, the issue is abandoned and we will not consider it.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

18

firm conviction that a mistake has been committed." *Id.* Thus, "[w]here there are two permissible view of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

The Guidelines provide a five-point offense-level increase for repeat and dangerous sex offenders against minors:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, neither [the career-offender enhancement in] § 4B1.1 nor [the repeat-offender enhancement in § 4B1.5(a)] applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

U.S.S.G. § 4B1.5(b)(1). The Guidelines define "covered sex crime" and "prohibited sexual conduct" to include convictions under § 2422. *See id.* § 4B1.5 cmt. n.2(A)(iii) (including offenses under Chapter 117 of title 18 of the United States Code); *id.* § 4B1.5 cmt. n.4(A)(i) (same).

The Guidelines commentary states that a "defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* § 4B1.5 cmt. n.4(B)(i). A prior instance can be considered an occasion of prohibited sexual conduct even if it did not occur during the instant offense or did not result in a conviction. *See id.* § 4B1.5 cmt. n.4(B)(ii). Where the defendant's instant conviction qualifies as prohibited sexual conduct, the district court need find only

19

one additional qualifying instance to constitute a "pattern of activity" and apply the § 4B1.5(b)(1) enhancement. *See Rothenberg*, 610 F.3d at 625 n.5.

Here, the evidence supported the district court's determination that Mr. Syed's communications conduct with the 13-year-old female constituted an attempt that would violate § 2422(b), thus qualifying as an instance of prohibited sexual conduct under § 4B1.5(b)(1). Specifically, the trial evidence showed that, in his conversations with the 13-year-old female, Mr. Syed asked about her turn ons (and asked her to elaborate on some sexual turn ons), called her "my love," arranged to spend time with her in a cemetery, and asked her to come alone. The text messages indicated that Mr. Syed arrived at the scheduled time and place, and the 13-year-old female left shortly after her arrival. Mr. Syed was upset and texted her that he had borrowed his sister's van "for nothing" before asking if they could meet another time. Given the due deference owed to the district court, this one instance, combined with the instant conviction involving the fictitious Samantha, supported the district court's § 4B1.5(b) enhancement. *See Rothenberg*, 610 F.3d at 625 n.5.[5]

---

[5] Thus, we need not determine whether Mr. Syed's conduct with his ex-wife also supported the enhancement.

20

## VI

For the reasons discussed above, Mr. Syed's convictions and total sentence are affirmed.

**AFFIRMED.**